```
                                                    CLERK'S OFFICE U.S. DIST. COURT
                                                         AT ROANOKE, VA
                                                              FILED

        IN THE UNITED STATES DISTRICT COURT           OCT 04 2012
        FOR THE WESTERN DISTRICT OF VIRGINIA
                   ROANOKE DIVISION                JULIA C. DUDLEY, CLERK
                                                   BY: /s/
                                                       DEPUTY CLERK
```

| | |
|---|---|
| SYLVESTER MIDDLETON, JR., | ) |
|     Petitioner, | )   Civil Action No. 7:12-cv-00266 |
| v. | )   **MEMORANDUM OPINION** |
| WARDEN CHRISTOPHER ZYCH, | )   By: Samuel G. Wilson |
|     Respondent. | )   United States District Judge |

Petitioner Sylvester Middleton, Jr., a federal inmate currently housed at the United States Penitentiary in Lee County, Virginia and proceeding *pro se*, filed this petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241, challenging his institutional conviction for fighting with another inmate. Middleton alleges that he was denied due process because the Bureau of Prisons ("BOP") failed to conduct his initial Unit Discipline Committee ("UDC") hearing within the three-day time limit prescribed by BOP regulations, which negatively affected his ability to defend himself. Middleton also alleges that the BOP dismissed a fighting charge against another inmate in a separate incident and as a consequence violated Middleton's right to equal protection by not doing the same in Middleton's case. The court finds that Middleton's claims have no merit and *sua sponte* dismisses his petition.

### I.

On January 17, 2011, while at the Federal Correction Institution in Edgefield, South Carolina, correctional officials charged Middleton with the institutional infraction of fighting with another, in violation of BOP Code 201. Five work days later Middleton attended his initial UDC hearing.[1] Middleton alleges that he apprised the UDC Unit Team at the UDC hearing that

---

[1] Pursuant to 28 C.F.R. § 541.7(a), the UDC determines one of the following: (1) the inmate committed the act charged, (2) the inmate did not commit the act charged, (3) based on the seriousness of the act charged, the

he would like to call an inmate witness in his defense, but that he only knew the inmate witness by his nickname and that the inmate witness had been transferred to another facility. According to Middleton, the witness would be able to testify that Middleton had only performed a "blocking motion" and that "[b]efore the two could engage in an altercation inmates broke it up." (Pl.'s Br. 3 ECF No. 2.) Middleton claims that the UDC Unit Team told him they could not locate an inmate using only a nickname and that if the inmate had already been transferred "it did not matter anyway." (Pl.'s Aff. ¶ 4, ECF No. 1-1.) Based on the seriousness of Middleton's charge, the UDC referred his case to the Disciplinary Hearing Officer ("DHO") for a hearing on the merits.[2]

On March 4, 2011, Middleton received his DHO hearing.[3] The DHO found that Middleton violated BOP Code 201 (fighting with another person) and sanctioned him by disallowing twenty-seven days of good conduct time, placing him in disciplinary segregation for fifteen days (which was suspended for 180 days), and suspending his commissary privileges for one month. Middleton appealed his disciplinary conviction, and the BOP upheld his conviction at all levels of appeal.

The BOP's regulations previously provided that an inmate charged with a serious infraction "is entitled to an initial hearing before the UDC, ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident." 28 C.F.R. §

---

incident will be referred to the DHO, or (4) the act charged is of the "Greatest or High severity" and will automatically be referred to the DHO.

[2] The DHO hearing determines whether or not the inmate committed the act charged or whether further investigation is warranted. 28 C.F.R. § 541.8(a).

[3] Middleton submitted the DHO report with his § 2241 petition. According that report, Middleton did not request any witnesses. (ECF No. 2-1) The DHO report also indicates that Middleton waived his right to a staff representative. (ECF No. 2-1) According to the report, in concluding that Middleton had in fact fought with another inmate in violation of prison regulations, the DHO relied on documentary evidence such as the written report of E. Santiago (the Special Investigation Service Lieutenant), review of closed circuit camera system footage, clinical encounter forms, and confidential information.

541.7.[4] In his first-level appeal, Middleton raised the single claim that correctional officials violated his rights to due process by not conducting that initial hearing until the fifth workday rather than three work days prescribed by the regulation. In his second-level appeal, Middleton, for the first time, added allegations that (1) he was prejudiced by the "lateness" of his UDC hearing because he was unable to call an inmate witness who was transferred in the interim, and (2) he was denied equal protection because in a separate incident another inmate was charged with fighting the same inmate Middleton was charged with fighting and the DHO dismissed that other inmate's charge.

## II.

Middleton alleges that he was denied due process because his UDC hearing was not timely held, and this delay prejudiced him because prevented his ability to properly defend himself. (Pl.'s Br. 2–4, ECF No. 2.) The facts Middleton alleges do not support a due process claim, and the court dismisses that claim.[5]

---

[4] Middleton bases his contention that the UDC hearing was to be conducted within three work days on 28 C.F.R. § 541.15(b), which was superseded by 28 C.F.R. § 541.7(c), which became effective on June 20, 2011.

[5] To the extent that Middleton alleges that the UDC and the DHO were not impartial decision-making bodies as required by law and challenges the sufficiency of the evidence considered in determining his punishment, the court dismisses those claims because they are unexhausted. A challenge to the BOP's implementation of an inmate's federal sentence of imprisonment is appropriately raised in a § 2241 petition after exhaustion of administrative remedies. See United States v. Wilson, 503 U.S. 329, 333–35 (1992); Randall v. Whelan, 938 F.2d 522, 524 n. 2 (4th Cir. 1991). Requiring exhaustion of remedies aids judicial review by allowing the appropriate development of a factual record in an expert forum; conserves the court's time because of the possibility that the relief applied for may be granted at the administrative level; and allows the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings. Neal v. Warden of FCC-Petersburg Petersburg, Va., 2010 WL 2024706 (E.D. Va. April 22, 2010); Chua Han Mow v. U.S., 730 F.2d 1308, 1313 (9th Cir. 1984) (quoting Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir. 1983) (per curiam)). After he has sought administrative relief, a prisoner may seek judicial review of the administrative response by filing a petition for a writ of habeas corpus under § 2241 in the district court with jurisdiction over the facility in which petitioner is confined. In re Jones, 226 F.3d 328, 332 (4th Cir. 2000).
Middleton could not now exhaust his administrative remedies, as the deadline for appealing a DHO decision to the Regional Director is twenty calendar days. 28 C.F.R. § 542.15(a). When a habeas petitioner fails to exhaust administrative remedies and, as a result, loses the opportunity to pursue them, his claims will be procedurally defaulted in a § 2241 proceeding. See Brown v. Smith, 828 F.2d 1493, 1495 (10th Cir. 1987) (per curiam).

"[P]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). However, before an inmate may be punished for violating prison disciplinary rules with the loss of a protected liberty interest (such as earned good conduct time, or the deprivation of property), Id. at 557-58, constitutional due process requires basic procedural safeguards, including advanced, written notice of the charges, written findings, and a limited right to call witnesses. See id. at 563–64. Conducting the UDC hearing within five rather than the BOP's recommended three work-day time frame falls far short of implicating any of these basic procedural safeguards or any core Fifth Amendment due process concern.[6] See Flanagan v. Shively, 783 F. Supp. 922, 931 (M.D. Pa. 1992) ("The Constitution does not require strict adherence to administrative regulations and guidelines.") See also Donaldson v. Samuels, No. 07-1072, 2007 U.S. Dist. LEXIS 83829, 2007 WL 3493654 at *4 (M.D. Pa. Nov. 13, 2007) ("These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court.").[7] Thus, the court finds that the BOP did not violate Middleton's right to

---

[6] Current BOP regulations note that UDC hearings are ordinarily held within five work days, and Middleton's was held on the fifth work day. See 28 C.F.R. § 541.7(c).

[7] The constitutional protections afforded to inmates are limited, and a claim that prison officials have not followed their own policies or procedures does not amount to a constitutional violation. See United States v. Caceres, 440 U.S. 741 (1978); see also Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983). In any event, before a court may grant habeas relief for a prison's alleged violation of disciplinary regulations, the inmate must first establish that the alleged violation resulted in prejudice. Hallmark v. Johnson, 118 F.3d 1073, 1080 (5th Cir.1997); White v. U.S. Parole Comm'n, 856 F.2d 59, 61 (9th Cir. 1988); Von Kahl v. Brennan, 855 F. Supp. 1413 (M.D. Pa. 1994) ("[T]his court is reluctant to overtax and/or hamstring officials' execution of disciplinary policies and procedures by mandating an automatic remand for technical non-compliance with a regulation, absent some showing of prejudice to the inmate."); Borre v. Garrison, 536 F. Supp. 76 (E.D. Va. 1982). Middleton has failed to demonstrate how the failure to conduct the UDC hearing within three days prejudiced him. The DHO report clearly outlines the evidence relied on in reaching the determination that Middleton had committed an infraction in violation of BOP Code 201. Accordingly, Middleton's allegation that officials failed to follow BOP procedures does not produce a constitutional violation and, thus, Middleton's claim fails.

due process by holding Middleton's UDC hearing outside of the BOP's recommended three-day period.

### III.

Middleton alleges that prison officials violated his right to equal protection because another inmate also was charged with but not convicted of fighting with inmate Wells on a separate occasion. The court finds that the facts Milton alleges do not support an equal protection claim, and the court dismisses that claim.

To establish an equal protection violation, Middleton must first demonstrate that he has been "treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). If he were to make such a showing, the court would then proceed to determine whether the disparity in treatment could be justified under the requisite level of scrutiny. See id.

Milton has made no showing that he was similarly situated and alleged no fact supporting the conclusion that the outcome of his hearing differed from the hearing of the other inmate because of intentional purposeful discrimination. Any number of reasons may exist to explain why the other inmate received no punishment at his DHO hearing; he may well have not been guilty of the same offense. "Merely claiming that other prisoners received less severe punishment for the same violation . . . does not create an equal protection claim." Wooten v. Hogsten, No. 6:11cv00190 2012 WL 1598080 (E.D.Ky. May 7, 2012); see also Millard v. Hufford, 2011 WL 681091 (3d Cir. Feb. 28, 2011).[8] The Fifth Amendment does not guarantee defendants a particular outcome; rather, its objective is to prevent purposeful and intentional

---

[8] Because Middleton cannot support his allegations of disparate treatment, this court need not consider whether he was discriminated against because of his membership in a protected class that demands heightened scrutiny in determining equal protection violations.

discrimination and guarantee due process of the law. Accordingly, the court dismisses Middleton's equal protection claim.

## IV.

For the reasons stated, the court dismisses Middleton's § 2241 petition.

The Clerk is directed to send a certified copy of this memorandum opinion and accompanying order to the petitioner.

**ENTER**: October 4, 2012.

_____
UNITED STATES DISTRICT JUDGE